UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
Western Division

99 JAN 13 AM 11: 55
U.S. DISTRICT COURT
N.D. OF ALABAMA

HOUSTON HARRIS,                    )
                                   )
        Plaintiff,                 )
                                   )     CV-98-P-0507-W
-vs.-                              )
                                   )
THE CITY OF DORA, ALABAMA,         )
a municipal corporation; and MAYOR )
GEORGE SIDES, in his individual and)     ENTERED
official capacities,               )
                                   )     JAN 1 3 1999
        Defendants.                )

## MEMORANDUM OPINION

Before the court is the defendants' Motion for Summary Judgment, filed on April 8, 1998. The court heard oral argument on the motion at the November 13, 1998 motion docket. The motion was thereafter taken under submission. The plaintiff alleges that Mayor George Sides and the City of Dora, Alabama discriminated against him in his effort to participate as a city council member. The defendants expressly deny any wrongdoing with regard to Mr. Harris. After careful consideration, the court finds that the defendants' motion is due to be granted.

## Facts[1]

This case stems from the election of the plaintiff, Houston Harris, to the Dora City Council in December of 1996. Harris is an African-American male who had never held public office prior to

---

[1]The facts as presented are viewed in the light most favorable to the non-moving party.

1

his election to the City Council of Dora, Alabama. Dora's population is approximately 2,500 and the city is governed by a mayor and seven city council members.[2] The mayor at the time of the events surrounding this lawsuit was George Sides.

Harris began his term of office on December 2, 1996. However, Harris served only three months of his four-year term as a council member. On February 25, 1997, Harris submitted his letter of resignation to the mayor and city council.[3] Harris testified that no one suggested that he submit the letter of resignation and that the purpose of the resignation letter was to "protest" the treatment of blacks and "black issues." According to the plaintiff, he believed that the letter of resignation would force the mayor to address the alleged discrimination. Harris asserts that he intended to withdraw his resignation after his concerns were addressed on record.

The plaintiff's charges of discrimination basically center on three main events: (1) the golf course incident, (2) the paving incident, and (3) the disagreement about a vote on a resolution for more security/drug programs.[4] The golf course event took place on February 11, 1997, as a result

---

[2]Under the mayor-council form of government, the mayor is considered to be a member of the council and has the right to vote on all matters presented to the city council. The mayor also serves as the presiding officer of the City.

[3]Harris's letter of resignation states:

> With this letter I hereby submit my resignation immediately as a Dora City Council member due to my experience that the City of Dora operates without giving any respect to the Positions held by individual members such as myself and some others. I regret this occasion and hope for God's blessing to somehow be delivered upon this the City of Dora, Alabama.

Defendants' Evidentiary Submission, Exhibit 1.

[4]The plaintiff also makes several general allegations concerning the conduct of Mayor Sides. According to Harris, the mayor refused to allow the plaintiff to put items on the meeting agenda, rejected the plaintiff's efforts to expend funds in predominately black areas, addressed the

2

of a proposal by one of the councilmen to create a golf center facility in Dora. Mayor Sides wanted the council to vote in favor of having a golf course architect address the council regarding the proposed facility. After Harris voted against the Mayor's proposal, the Mayor allegedly told Harris that he had "let him down."

The second event which allegedly led to the plaintiff's resignation concerned a proposal by the plaintiff to pave Harris Circle, the street on which the plaintiff lived. Harris alleges that the Mayor unnecessarily and inappropriately "interrogated" him with regard to the costs of paving the road. The proposal did not receive a majority vote.

Finally, Harris alleges that on February 25, 1997, Mayor Sides "disrespected him" and "disregarded the council" when he apparently told the audience and other council members that Harris had pre-approved a contract to increase security and drug enforcement that was before the council. The plaintiff testified that he was "hurt" by the mayor's comment and that he had not pre-approved the contract. After the mayor called for a vote, the plaintiff left the meeting in order to compose himself. The mayor thereafter adjourned the meeting.

After the council meeting on February 25, Harris submitted his letter of resignation. Upon receipt of the plaintiff's resignation, the Mayor called a special meeting on February 26, 1997 to address the issue of Harris's resignation. At the meeting, the plaintiff's resignation was voted on and accepted by the council. On February 27, 1997, the plaintiff sent a letter directly to Mayor Sides that purported to withdraw his notice of resignation. The Mayor refused to accept the withdrawal. The vacant council seat left by the plaintiff was filled by a black female several months later.

---

plaintiff in a disrespectful, abrasive, and belittling tone of voice during meetings, and intimidated blacks into voting for him during elections.

3

Harris filed this suit against the City of Dora and Mayor George Sides, individually and in his official capacity, on March 3, 1998. The plaintiff claims that he was racially discriminated against under § 1983 and that he was denied due process of the law. Apparently, the plaintiff also claims that the Mayor engaged in voter fraud.[5]

### Analysis

Section 1983 prohibits "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting under the color of state law. The United States Supreme Court held in <u>Monell v. Department of Social Servs.</u>, that local governments qualify as "persons" under the state action requirement. 365 U.S. 167, 190-92 (1961). Municipalities and individual municipal agents acting in their official capacities may be sued for compensatory damages and injunctive relief under § 1983. Official capacity suits are treated like suits against the entity itself, "[a]s long as the government entity receives notice and an opportunity to respond." <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985)(citing <u>Brandon v. Holt</u>, 469 U.S. 464 (1985)).[6] However, the "official capacity" requirement prohibits liability based merely on the theory of respondeat superior. In other words, "a local government may not be sued under § 1983 for injury inflicted solely by its

---

[5]It is unclear from the pleadings whether the plaintiff actually intended to state a claim for voter fraud. While the defendants' brief in support of their motion for summary judgment does address the issue of voter fraud, it does so in a somewhat conclusory manner, stating that there is no evidence of such a claim. Regardless, to the extent that the plaintiff intended to assert a claim of voter fraud, there does not appear to be any basis upon which relief can be granted by this court. Therefore, the claim is due to be dismissed.

[6]Because the plaintiff has sued both the City of Dora and the Mayor in his official capacity, the court dismisses the claim against the Mayor in his official capacity as duplicative. <u>See</u> <u>DeSisto College, Inc. v. Line</u>, 888 F.2d 755, 764 (11th Cir. 1989).

4

employees or agents." Monell, 436 U.S. at 694. For municipal liability to exist, the entity's "policy or custom" must have played a role in the violation of a federal law. See Monell, 436 U.S. at 694.

In contrast, individual liability under § 1983 requires that the local official act under the color of state law in depriving the plaintiff of a federally protected right. See Kentucky v. Graham, 473 U.S. at 167-68. However, the defense of absolute or qualified immunity may be available to government officials in many circumstances when faced with personal liability. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In this case, the plaintiff has not presented any evidence that the City of Dora deprived the plaintiff of any constitutional rights, privileges, or immunities. There are no "policy or customs" established by the City to result in a finding of liability. Simply put, the plaintiff served as a city council member until he resigned on February 25, 1997. Although the plaintiff claims to have felt "disrespected" by Mayor Sides, the evidence does not show that the Mayor's actions were race-based. Because there is no evidence to allow a reasonable jury to find any racial discrimination or deprivation of due process by the City, the defendants' motion for summary judgment is due to be granted on the claims against the City of Dora, Alabama.

Similarly, the claims against Mayor Sides in his individual capacity are also due to be dismissed. The evidence presented does not support the plaintiff's assertions of racial discrimination and denial of due process. Even assuming that there were genuine issues of material fact regarding the personal liability claims against Mayor Sides, the defenses of absolute immunity would apply. This circuit has held that city councilmembers are not liable for conduct in furtherance of their duties. See Baytree of Inverrary Realty Partners v. City of Lauderhill, 873 F.2d 1407, 1409 (11th Cir. 1989); see also Espanola Way Corp. v. Meyerson, 690 F.2d 827, 829 (11th Cir. 1982), cert. denied, 460 U.S.

5

1039 (1983)(the legislative activity of voting by a city councilperson is entitled to absolute immunity).

Conclusion

Because there are no genuine issues of material fact to submit to a jury, the court finds that the defendants' motion for summary judgment is due to be granted.

Date: _____, 1999.

_____
Chief Judge Sam C. Pointer, Jr.

Service List:
     Marvin L. Stewart, Jr.
     Stephanie D. Banks
     David A. Lee